**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | | |
|---|---|---|
| SANDICE THRASHER, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | FILE NO. |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| LAVENDER PEST | ) | |
| CONTROL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

_____

## COMPLAINT

1.

Plaintiff Sandice Thrasher ("Plaintiff" or "Ms. Thrasher") submits the following Complaint against Defendant Lavender Pest Control, Inc. ("Defendant" or "LPC") alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended,  42 U.S.C. §§ 2000e *et. seq.* ("Title VII").

## INTRODUCTION

2.

Sandice Thrasher worked for Defendant for 20 years; 2 decades of Ms. Thrasher's adult working life were devoted to LPC and its owner, Blake Lavender ("Lavender"). Ms. Thrasher performed every duty that Lavender requested of her -personal and professional- because she was dedicated to him and to LPC.  When

Ms. Thrasher was directed to perform duties associated with Lavender's rental properties, Ms. Thrasher readily agreed, eventually performing most, if not all, of the tasks associated with renting out lower-income properties. Unfortunately, within weeks of her complaints to LPC relating to several incidents involving its male employees, LPC unlawfully terminated Ms. Thrasher's employment. LPC's stated reason for terminating Ms. Thrasher's employment -namely, that her position as its office manager was suddenly redundant and should be eliminated- is pretextual. Ms. Thrasher was fired from LPC because she opposed its unlawful employment practices and requested a formal meeting to discuss her complaint with Lavender.  On October 29, 2021 -the day of the scheduled meeting- Lavender refused to address Ms. Thrasher's complaint, choosing instead to fire her. After years of committed service and dedication to Lavender and LPC, Ms. Thrasher was escorted out of LPC's office with 2 weeks of vacation.

3.

Ms. Thrasher has exhausted her administrative remedies by timely filing a charge of discrimination and retaliation with the U.S. Equal Employment Opportunity Commission and has received her Notice of Right to Sue which is attached hereto as **Exhibit "A."**

## JURISDICTION AND VENUE

### 4.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under Title VII.

### 5.

This Court is an appropriate venue for Ms. Thrasher's claims under 42 U.S.C. §§ 2000e-5(f)(3) and 28 U.S.C. §§ 1391(b) and 1391(c)(2) because the Defendant conducts business in this district and division, and a substantial part of Defendant's unlawful actions and practices alleged herein were committed within the Middle District of Georgia.

## PARTIES

### 6.

Ms. Thrasher is a citizen of the State of Georgia residing in Oglethorpe County, Georgia. Ms. Thrasher submits herself to the jurisdiction of this Court.

### 7.

From August 2001 to October 29, 2021, Ms. Thrasher worked for LPC at its corporate office located in Athens, Georgia.

### 8.

LPC is a corporation incorporated under the laws of the State of Georgia; LPC transacts business in and around the Middle District of Georgia. LPC may be

served with process by delivering a copy of the Complaint and summons to its Registered Agent, S. Blake Lavender, at 660 Hawthorne Avenue Athens, Georgia 30606.

## **RELEVANT FACTS**

9.

LPC provides pest control services from its location in Athens, Georgia to about 28 different counties.

10.

LPC is owned and operated by Blake Lavender.

11.

On or around August 8, 2001, Ms. Thrasher was hired by Lavender to work for LPC at $10 per hour performing general clerical duties including, without limitation, filing, answering the phone, and providing general office support.

12.

Upon her hire, Ms. Thrasher filled out a timesheet at the end of each day calculating the number of hours she worked; one hour was noted for her lunch. Ms. Thrasher continued this practice until sometime in 2002.

13.

Ms. Thrasher received direction from Lavender.  Lavender assigned Ms. Thrasher's work and set her rate of pay.  Lavender was pleased with Ms.

Thrasher's performance, increasing her salary on more than one occasion within her first two years of employment with LPC.

14.

Lavender was effusive in his praise for Ms. Thrasher and he continued to increase her job duties at LPC.

15.

Lavender owned numerous rental properties located in and around Athens, Georgia. In 2001, when LPC hired Ms. Thrasher, Lavender's rental properties were owned by, upon information and belief, Normal Properties, of which Lavender was a co-owner.  At some point, Lavender advised Ms. Thrasher he parted ways with Normal Properties which previously managed his rental properties.

16.

In or around August and September of 2003, Ms. Thrasher began performing work on Lavender's rental properties.

17.

In 2003, Ms. Thrasher was aware Lavender held a vacant rental property located within walking distance to LPC's office and she asked to rent it from him. From 2003 to 2010, Lavender rented the unit to Ms. Thrasher, charging her the same rent as the rest of his tenants.

18.

Lavender did not give Ms. Thrasher any reductions in rent for the work she performed at his direction on his rental properties.

19.

Lavender did not explain to Ms. Thrasher how she would be compensated for the work she performed for him on his personal rental properties.

20.

Lavender did not ever explain and/or advise Ms. Thrasher how LPC classified her employment, including whether she was entitled to overtime compensation.

21.

Lavender did not direct Ms. Thrasher to maintain a log of her mileage to and from the rental properties for the work she performed for him.

22.

In or around 2002, Ms. Thrasher was instructed to stop completing written timesheets and she began earning a salary. Ms. Thrasher was not advised if she would earn overtime compensation.

23.

Ms. Thrasher's duties relating to Lavender's rental properties included, without limitation, responding to tenant requests during day, weekend, and evening

hours, visiting rental properties, showing properties, conducting move-in and move-out inspections, scheduling pest control services, cleaning properties, marketing properties for rent, and scheduling repairs and/or maintenance.

24.

From 2003 to 2014, Lavender executed lease agreements individually with his tenants. When a tenant was ready to execute a lease, Lavender directed Ms. Thrasher to sign her name above his name on the lease agreement so he did not have to be bothered with the paperwork.

25.

Ms. Thrasher's duties at LPC continued to grow. In or around 2004, Lavender gave Ms. Thrasher the title of LPC's office manager, a title Ms. Thrasher kept for decades until she was fired in 2021. Ms. Thrasher's duties included, without limitation, supervising one office clerk, handling customer accounts, scheduling pest control services, taking deposits to the bank, organizing accounts receivable, and any other office task she was assigned.

26.

In addition to her duties at LPC and for Lavender's rental properties, Ms. Thrasher also regularly shuttled Lavender to and from a motorcycle shop in Watkinsville, Georgia. Ms. Thrasher was not directed to maintain a driving log, and she was not compensated for her gas, despite the fact the drive to the

motorcycle shop was approximately 22 miles roundtrip. Ms. Thrasher also drove Lavender to the airport, and assisted his children and his wife with whatever tasks they needed.

27.

In 2014, Lavender created SBL Properties, LLC ("SBL"), which, upon information and belief, he owned. Lavender advised Ms. Thrasher that he transferred his rental properties into SBL so, going forward, the duties she performed on Lavender's rental properties were now for the benefit of SBL.

28.

Lavender advised Ms. Thrasher that SBL would now be a party to the lease agreements with his tenants; Ms. Thrasher was instructed to sign her name as SBL's agent. Attached hereto as **Exhibit "B"** is a copy of one such lease agreement executed by Ms. Thrasher as the agent on behalf of and for the benefit of SBL.

29.

After SBL's formation, Lavender did not explain Ms. Thrasher's new role to her as the agent for and on behalf of SBL.

30.

At all times relevant, Lavender did not explain to Ms. Thrasher the extent of her liability and/or the exposure she could face serving in the role as agent for

SBL. Instead, Lavender directed Ms. Thrasher to perform certain tasks and she did so without question.

31.

In 2014, after Lavender advised her that she would serve as SBL's agent, Ms. Thrasher was not told how she was classified for this work, or how she would be compensated for her gas or overtime hours.  At all times relevant, Ms. Thrasher paid for her own gas, used her own car, and, until 2011 used her personal cell phone for SBL business.  Ms. Thrasher never agreed to any work schedule or pay scheme that contemplated the office hours, nights, weekends, or holidays that she worked for the benefit of SBL and/or Lavender.

32.

Lavender was aware of Ms. Thrasher's experience and education; Lavender took advantage of Ms. Thrasher for his personal benefit knowing she would not question him.

33.

In 2014 to 2018, Ms. Thrasher received a 3% increase in her salary in addition to the Christmas bonuses she and the other LPC employees received. In 2018, Ms. Thrasher received a raise which was the last increase she received.  All of Ms. Thrasher's compensation was paid by LPC, other than a few gifts she received from Lavender and his wife.

34.

Lavender was thrilled with Ms. Thrasher's performance for SBL on his rental properties. With Ms. Thrasher doing the work, Lavender was able to enjoy the rental income while avoiding paying market rate to a management company.

35.

Ms. Thrasher's work on the rental properties continued until she was fired. The work was cyclical because it was typically based on the UGA school term. February through August typically involved a significant amount of work because the leases ended. When a lease ended, Ms. Thrasher was required to prepare a lease renewal or get the unit ready to show to a new tenant.  If a tenant moved out, Ms. Thrasher's duties included taking photos, listing the property, scheduling showings with both the current tenant and prospective tenants, preparing leases, conducting the move-out/move-in walk-through inspection, and arranging for whatever service was required on the unit such as cleaning and painting. Ms. Thrasher, not Lavender, was the point of contact throughout the entirety of the tenants' leases.

36.

Ms. Thrasher was required to keep up with her work at LPC even when her work on the rental properties took a significant amount of time; Ms. Thrasher performed all of the duties asked of her.

37.

The employees at LPC were aware of Ms. Thrasher's duties for Lavender and for SBL; the employees knew that she was performing work directed by Lavender.

38.

As time passed, Ms. Thrasher's duties on the rental properties increased. At first Lavender was occasionally involved. Eventually, however, Lavender did not handle the rental duties, leaving them to Ms. Thrasher.  Ms. Thrasher did not have the authority to set rental rates or conditions, to determine deposit amounts or to authorize repairs. Because of this, Ms. Thrasher spent a large portion of her time trying to reach Lavender with a tenant need. Tenant needs, and the corresponding disasters associated with renting low-income homes, often occurred over holidays, after hours on weekends, and nights.

39.

On many occasions, Ms. Thrasher would communicate with tenants before her work day at LPC began, as the messages/requests were sent during early mornings or they had been sent late the previous evening. Ms. Thrasher even worked on Good Friday -when LPC's office was closed-  fielding tenant calls.

40.

Incredibly, in 2017 over the July 4th holiday weekend, a tree fell on one of the rental homes. The result was a disaster; the home was a duplex and the tenants in both units were displaced and their pets were without shelter. Ms. Thrasher arranged for a U-haul, found a kennel for the pets, and assisted both tenants in moving their belongings out of the rental property. Lavender did not assist Ms. Thrasher with any of the work she performed in connection with the destruction to SBL's duplex as he was, presumably, enjoying the July 4th holiday.

41.

On another occasion, Ms. Thrasher could not find a service company to clean a unit Lavender wanted to rent. Incredibly, Ms. Thrasher cleaned the unit herself.

42.

Lavender often made offensive remarks in the workplace. One such instance occurred when a candidate for employment was waiting in LPC's office. Grumbling, Lavender complained about having to put up the signs required by the U.S. Department of Labor in Spanish, which Ms. Thrasher overheard. The candidate later posted about the incident.

43.

In 2018, the Brett Kavanaugh hearings were held. Lavender boldly referenced the hearings -in front of Ms. Thrasher and another employee- stating, words to the effect of, any woman could say something and ruin a person's life.

44.

In 2018, Lavender conducted assessments of all managers, including Ms. Thrasher based on alleged inequities in the managers' salaries compared to their contributions to LPC. Each manager, including Ms. Thrasher, provided Lavender with a list of their duties.

45.

Lavender scheduled a meeting with Ms. Thrasher and another employee to review the list of duties. Before the meeting, Ms. Thrasher prepared a typed list of her office duties at LPC and the rental property duties she performed for SBL; Ms. Thrasher handed Lavender her list when their meeting started.

46.

During the meeting, Ms. Thrasher addressed the differences in schedules between the managers. Specifically, the male managers were afforded a lunch break in addition to a one-hour break to go to the gym.

47.

Ms. Thrasher asked if she could change her schedule to arrive at the office at 8:20 a.m., leave at 4:20 p.m., and work through lunch.

48.

Lavender agreed to allow Ms. Thrasher to change her hours as long as she got in her 40 hours of work, to which Ms. Thrasher agreed.

49.

After conducting his 2018 assessment, Lavender evidently was satisfied with Ms. Thrasher's contributions to LPC, to him individually, and to SBL as her employment continued.

50.

After their 2018 meeting, Lavender was keenly aware that Ms. Thrasher was performing clerical duties each week at LPC, and working through lunch. Lavender was also aware that Ms. Thrasher performed all of the duties associated with the rental properties, regardless of how big or small a task.

51.

In 2021, Ms. Thrasher became increasingly uncomfortable with the way Lavender treated the male employees at LPC. Ms. Thrasher observed that the women were treated like hostesses and the men were treated as equals.

52.

Ms. Thrasher previously attempted to discuss this with Lavender during her 2018 meeting with him when she raised the issue of the schedules for the male employees (*e.g.*, the gym break the male employees enjoyed mid-afternoon while the women worked in LPC's office).

53.

Another example in LPC's workplace involved a male employee who often came into the office yelling and screaming. Lavender typically ignored requests for him to intervene until he was forced to do so.  When Ms. Thrasher tried to say something, Lavender treated her like a busybody.

54.

In March 2021, Ms. Thrasher raised concern with Lavender following an incident where a male employee, Michael Fowler, verbally assaulted a female employee after she asked about LPC's new email protocols for its customers.  This verbal assault occurred in LPC's front office in front of Ms. Thrasher and Maddy McKeel ("McKeel"), another female employee.   The day after the incident, Ms. Thrasher emailed Lavender -who was on vacation- specifically referencing the incident and requesting that LPC intervene. Lavender ignored Ms. Thrasher's request to discipline the male employee.

55.

In October 2021, Lavender purportedly decided to have LPC's brand new COO, Daniel NeSmith ("NeSmith"), suddenly conduct an assessment of its managers.

56.

NeSmith requested that each LPC manager document their daily duties, and he provided them with a blank log sheet to use.

57.

NeSmith had copies of the lists each manager prepared during Lavender's 2018 assessment, including Ms. Thrasher's typed list detailing her clerical duties at LPC and her tenant-related duties for SBL.

58.

On October 4, 2021, Ms. Thrasher gave NeSmith a log sheet of her daily clerical duties for LPC; during that week Ms. Thrasher was also performing duties for an employee who was out of the office. On her log, Ms. Thrasher included several of her tenant-related duties such as responding to tenant messages and arranging a plumber for the rental properties.

59.

NeSmith asked Ms. Thrasher to turn in an additional week of log entries. On October 11, 2021, Ms. Thrasher turned in another log sheet with her daily duties.

Ms. Thrasher also attached a letter that addressed her job duties, her role at LPC, and the value she had to Lavender and his related interests (including the benefit to SBL for the work she performed on the tenant related activities).

60.

In her letter, Ms. Thrasher addressed LPC's lack of discipline for its male managers who exhibit abusive behavior in the office.

61.

The very next day, October 12, 2021, Ms. Thrasher was working at her desk in LPC's front office. While she was working, Ms. Thrasher and McKeel witnessed manager Geoff Couch ("Couch") verbally assault a female employee. The employee was crying and visibly upset after Couch's attack in the office.

62.

LPC's failure to intervene and Lavender's failure to address discipline with the male managers at LPC emboldened Couch.

63.

Ms. Thrasher was disgusted. Because her previous complaints to Lavender were ignored, Couch's actions escalated; he stormed into LPC's office with impunity, screaming at any female employee he felt like yelling at on a given day. Ms. Thrasher's desk was located in the front office; therefore, she was forced to witness Couch's tantrums and attacks on female employees.

64.

Ms. Thrasher was not disciplined like the male employees at LPC. When she tried to address an issue in the office -even slightly raising her voice- Lavender would bellow: "That's enough. In my office now," chastising Ms. Thrasher and treating her like a schoolgirl in front of other LPC employees.

65.

Ms. Thrasher addressed Couch's conduct with NeSmith the same day of the incident, explaining LPC's practice of failing to discipline male employees.

66.

For example, Lavender treated Couch like a buddy, texting with him about his (Couch's) childrens' sporting activities causing Couch to repeatedly miss work at LPC. Lavender showed more interest in the youth sports than he did holding Couch accountable for his absences at LPC.

67.

On October 15, 2021, Ms. Thrasher met with NeSmith to discuss her job duties. In the meeting, Ms. Thrasher again complained about Couch's outburst in LPC's office three days before when he verbally assaulted a female employee. Ms. Thrasher complained specifically that the male employees, like Couch, were not disciplined by LPC and that Lavender usually ignored and/or tried to avoid disciplining the male employees. Ms. Thrasher also described how Lavender would

discipline her, which was to humiliate her in the office in front of others, silencing her, and demanding she go into his office like a schoolgirl.

68.

During their meeting on October 15, 2021, NeSmith informed Ms. Thrasher that he discussed Couch's October 12th verbal assault on a female employee with Lavender. NeSmith advised Ms. Thrasher that he (NeSmith) questioned Lavender about LPC's employment practices such as discipline. NeSmith told Ms. Thrasher that Lavender conceded he had not previously written up a male employee.

69.

Ms. Thrasher advised NeSmith that she wanted to meet with Lavender to discuss her specific complaint involving Couch which she witnessed on October 12th, and LPC's unlawful employment policy on discipline relating to men and women.

70.

At the end of their meeting on October 15th, NeSmith gave Ms. Thrasher a typed paper with her job description at LPC that he composed. The bottom of the paper had a blank space for Ms. Thrasher's professional goals and objectives at LPC which he (NeSmith) instructed her to complete and return to him at the end of October.

71.

When Ms. Thrasher followed up on her request for a meeting with Lavender, NeSmith advised her that he spoke to Lavender about her complaint relating to the Couch incident, as well as the other issues she raised with NeSmith in their meeting on October 15.  NeSmith then advised Ms. Thrasher that a meeting was scheduled for October 29, 2021, between Lavender, Ms. Thrasher, and NeSmith, so that Ms. Thrasher could discuss her complaints relating to Couch's October 12th outburst, and LPC's discipline toward men and women.

72.

On October 29, 2021 - the day of the scheduled meeting - Lavender refused to discuss Ms. Thrasher's complaints.   Instead, Lavender terminated Ms. Thrasher's employment with LPC.

73.

After she was fired, NeSmith walked Ms. Thrasher to her car and advised her that he would "protect" the female employees at LPC.

74.

Ms. Thrasher's termination from LPC occurred 14 days after she complained to NeSmith about Couch's verbal assault on a female employee, requesting a meeting with Lavender.

75.

Lavender advised Ms. Thrasher that LPC no longer needed the office manager position because it was redundant, resulting in her termination of employment with LPC.

76.

Lavender did not advise Ms. Thrasher as to the status of her agency relationship with and/or for the benefit of SBL, which Lavender directed.

77.

To date, neither Lavender nor SBL, has provided Ms. Thrasher with notice terminating her agency relationship with and/or for the benefit of SBL.

78.

Since Ms. Thrasher's termination from LPC, McKeel performs the same clerical duties that Ms. Thrasher performed as LPC's office manager. McKeel is required to clock in/out when she arrives and leaves LPC's office, as well as when she takes her lunch break.

79.

McKeel does not perform Ms. Thrasher's property management/agent duties for Lavender, SBL, or LPC.

## COUNT ONE

## Retaliation in Violation of Title VII

80.

Plaintiff incorporates by reference paragraphs 1 through 79 as if fully set forth herein.

81.

Plaintiff is an employee as defined by Title VII.

82.

LPC is an employer as defined by Title VII. LPC is engaged in an industry affecting commerce and has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

83.

 Ms. Thrasher was terminated by LPC in retaliation for her complaints about unlawful sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a).

84.

As a result of Defendant's unlawful actions, Ms. Thrasher has suffered lost compensation and other benefits of employment, physical and emotional distress, inconvenience, loss of income, humiliation, damage to her reputation, and other indignities, in an amount to be proven at trial.

85.

Ms. Thrasher is entitled to an award of back pay, and benefits, compensatory damages, attorney's fees, and all other appropriate damages, remedies, and other relief available under Title VII and all federal statutes providing remedies for violations of Title VII, including 42 U.S.C. §§ 1981a and 2000e-5.

86.

Defendant willfully and wantonly disregarded Ms. Thrasher's rights; Defendant's unlawful actions against Ms. Thrasher were undertaken in bad faith and with reckless indifference to Ms. Thrasher's rights thereby entitling Ms. Thrasher to punitive damages pursuant to 42 U.S.C. §1981a.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Thrasher demands a **TRIAL BY JURY** and requests the following relief:

(a) That she be awarded a declaratory judgment that Defendant violated her rights under Title VII;

(b) That this Court issue a permanent injunction against Defendant, prohibiting it from engaging in any employment practice or policy which discriminates against others similarly situated to Plaintiff because of their sex and/or opposition to discriminatory or unlawful practices, or because of their participation in this lawsuit;

(c) That Plaintiff be reinstated to her position. In the event reinstatement is not viable, that Plaintiff be awarded front pay;

(d) That Plaintiff recover from Defendant back pay, benefits, and any other equitable relief that is owed, with prejudgment interest thereon;

(e) That Plaintiff recover compensatory damages in an amount to be determined by a jury;

(f) That Plaintiff recover punitive damages against Defendant in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such conduct in the future, as to be determined by a jury; and

(g) Any other such further relief that this Court deems equitable and just.

## <u>PLAINTIFF HEREBY DEMANDS A JURY TRIAL</u>

Plaintiff demands a jury trial on all issues triable by jury.


Respectfully submitted this 13th day of February, 2023.


[*Signature only on the following page.*]

**WORTH JARRELL LLC**

*/s/ Kimberly A. Worth*
Kimberly A. Worth
Georgia Bar No. 500790
kworth@worthjarrell.com

Five Concourse Parkway
Suite 3200
Atlanta, Georgia 30328
Telephone/Facsimile: (404) 760-6016